IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

JACOB MCGEHEE and )
STEVEN RAY HEATH, )
 )
    Plaintiffs, )
 )
v. ) Case No. CIV-15-145-C
 )
SOUTHWEST ELECTRONIC )
ENERGY CORPORATION, )
FOREST OIL CORPORATION, and )
LANTERN DRILLING COMPANY, )
 )
    Defendants, )
 )
and )
 )
SOUTHWEST ELECTRONIC )
ENERGY CORPORATION, )
 )
    Third-Party Plaintiff, )
 )
v. )
 )
ENGINEERED POWER LP, )
TELEDRIFT, INC., )
 )
    Third-Party Defendants. )

MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment filed by Third-Party Defendant Teledrift, Inc.[1] (Dkt. No. 118.) Defendant and Third-Party Plaintiff Southwest Electronic Energy Corporation ("SWE") has also filed a Motion for Summary Judgment. (Dkt. No.

---

[1] For the purposes of this Opinion and Order, the Third-Party Defendant shall generally be referred to as "Teledrift." The Court will not address the arguments regarding Teledrift's name unless it is presented in a separate motion. See LCvR7.1(c).

124.) The appropriate parties have responded and the Motions are now at issue. The Motions share common facts and issues and both will be discussed herein.

I. Background

Plaintiffs McGehee and Heath were injured while working at the Teledrift facility in Moore, Oklahoma. The incident occurred while Plaintiffs attempted to remove a Measurement While Drilling ("MWD") tool from an encasing drill collar and a battery inside the tool exploded. The MWD tool is a long cylinder that fits inside a slightly larger collar; once combined, the tool is called the Teledrift ProShot. Teledrift manufactures and leases out the ProShot for drilling operations.

Teledrift leased the ProShot in question to Defendants Forest Oil Company and Lantern Drilling Company[2] and they returned it with the MWD tool stuck or wedged inside the drill collar. This was a common way the tools were returned to Teledrift due to the snug fit and the tendency for dirt and other drilling debris to get wedged between the tool and collar during drilling operations. Plaintiffs commonly used a combination of tapping or pushing on the inner tool with a steel bar and spraying water inside the gap to separate the parts. Unfortunately, the technique was not successful on May 24, 2012, when the lithium battery cell inside the tool exploded, causing harm to Plaintiffs.

Plaintiffs filed suit against SWE for defective design and warnings of the battery pack that contained the exploding lithium battery cell. SWE filed a third-party complaint against Teledrift for indemnification, alleging Teledrift was the designer of the battery pack

---

[2] Forest Oil Company and Lantern Drilling Company were conducting joint drilling operations and thus both companies leased the same ProShot. Both Defendants have since been terminated from the case. (Mem. Op. and Order, Dkt. No. 111.)

and SWE merely performed assembly tasks. SWE seeks indemnity from Teledrift pursuant to the dual-capacity doctrine and 12 Okla. Stat. § 832.1. Teledrift filed a motion for summary judgment on these issues[3] and SWE filed a motion for summary judgment asking the Court to find Teledrift was the designer of the battery pack.

## II. Standard

The standard for summary judgment is well established. Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(c). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. Administrative Workers' Compensation Act

The Administrative Workers' Compensation Act, ("AWCA") 85A Okla. Stat. §§ 1 et seq., is Oklahoma's current workers' compensation statutory scheme, having replaced

---

[3] Teledrift's first proposition argues SWE violated the Court's Order by maintaining an improper third-party complaint against both Teledrift and Flotek. (Teledrift's Mot. for Summ. J. Dkt. No. 118, pp. 12-14.) The Court finds no violation.

the Workers' Compensation Code ("WCC"), 85 Okla. Stat. §§ 1 et seq., on February 1, 2014. In its Memorandum Opinion and Order dated December 22, 2015, the Court applied the AWCA because the outcome was the same under each version of the law. (Mem. Op. and Order, Dkt. No. 58, p. 3.) Unlike the issue presented in the earlier Order, the present issues do not involve equivalent outcomes based on the statutory language. Therefore, the Court must determine which statutory scheme applies.

The AWCA applies "only to claims for injuries and death based on accidents which occur on or after [its] effective date" and "[t]he Workers' Compensation Code in effect before the effective date of [the AWCA] shall govern all rights in respect to claims for injuries and death based on accidents occurring before the effective date of this act." 85A Okla. Stat. § 3. Because Plaintiffs' injuries occurred on May 24, 2012, well before the effective date of February 1, 2014, the WCC shall apply to this case. See Holliman v. Twister Drilling Co., 2016 OK 82, ¶ 5, 377 P.3d 133, 134; Chaney v. Wal-mart Stores Inc., No. CIV-15-592-R, 2015 WL 6692108, at *11 (W.D. Okla. Nov. 3, 2015) (listing cases).

IV. Workers' Compensation Immunity

Teledrift argues that because it was Plaintiffs' employer, it is immune from paying indemnity to SWE for Plaintiffs' claims pursuant to the workers' compensation immunity statute. SWE asserts Teledrift's parent corporation was Plaintiffs' employer, so the immunity statute does not apply.

The WCC immunity statute states

[t]he liability prescribed in this act shall be exclusive and in place of all other liability of the employer and any of his or her employees, at common law or otherwise, for such injury, loss of services, or death, to the employee . . .

4

except in the case of an intentional tort, or where the employer has failed to secure the payment of compensation for the injured employee.

85 Okla. Stat. § 302(A). For immunity to apply, the Court must determine whether an employer-employee relationship was in existence at the time the injury occurred. Brown v. Burkett, 1988 OK 49, ¶ 4, 755 P.2d 650, 651. Whether such a relationship exists is a question of law. Clark v. First Baptist Church, 1977 OK 177, ¶ 7, 570 P.2d 327, 328 (citation omitted). The employer-employee relationship may be evidenced by factors such as "commencement and duration of the [employment] agreement, right to hire and discharge[,] and agreement as to payment." Id. ¶ 11, 570 P.2d at 329. The "decisive test" used to determine if a relationship was present is "whether the employer retained a right of control and superintendence of the work." Id. (citation omitted).

Here, Flotek Industries, Inc. ("Flotek") was the parent corporation of several wholly-owned subsidiaries, including Teledrift and Flotek Paymaster, Inc. Plaintiffs performed their daily work duties at the Teledrift facility in Moore, Oklahoma. Flotek Paymaster, Inc. performed payroll services for Flotek subsidiaries, including paying Plaintiffs. The hiring documents came from Flotek, as was the practice with all of Flotek's subsidiaries. Flotek, as a parent corporation, contributed administrative resources to its subsidiaries such as human resources services. When questioned at deposition, both Plaintiffs stated they worked for Teledrift and Flotek, and that Flotek owned Teledrift.[4] It is undisputed that Plaintiffs reported to a shop foreman, who reported to Teledrift's

---

[4] The transcripts reveal both Plaintiffs were somewhat confused about the corporate structure between the companies and Plaintiffs were encouraged to refer to Flotek when discussing their employer rather than Teledrift.

5

regional manager, who reported to Teledrift's operations manager. It is undisputed that Teledrift's regional manager completed performance evaluations and two Teledrift managers reviewed Plaintiffs' salaries and made recommendations for raises.

The Court finds Teledrift retained the right of control and superintendence of Plaintiffs' work. This was achieved through a chain of command routed through Teledrift and Teledrift's management team making supervisory decisions through performance evaluations and recommendations for raises. While the documents make it appear Flotek commenced the employment, Teledrift controlled the daily activities of Plaintiffs' work, initiated salary adjustments, and presumably would initiate firing procedures if an employee received poor performance evaluations. Additionally, the Oklahoma Court of Civil Appeals has stated "a parent corporation is not an employer of subsidiary employees under the immunity provisions of our workers' compensation act." Hearn v. Petra Int'l Corp., 1985 OK CIV APP 37, ¶ 8, 710 P.2d 769, 771 (footnote omitted) (holding that a parent corporation is considered a third party against which a plaintiff may maintain a tort action). Therefore, the Court finds as a matter of law Teledrift was Plaintiffs' employer. See Fed. R. Civ. P. 56(g). Judgment cannot be granted on this issue because the indemnity inquiry is not yet concluded.

## V. Dual-Capacity Doctrine

The dual-capacity doctrine serves as an exception to general workers' compensation immunity that protects employers. SWE argues Teledrift owes indemnity because it acted in a different capacity, or possessed a separate persona from that of employer. In response, Teledrift argues Oklahoma has rejected the dual-capacity doctrine.

6

The dual-capacity doctrine states an employer may be considered a third person or entity "if he possesses a second persona so completely independent from and unrelated to his status as an employer, that by established standards, the law recognizes it as a separate legal person." Weber v. Armco, Inc., 1983 OK 53, ¶ 6, 663 P.2d 1221, 1225 (footnote omitted). One possible second persona is that of a manufacturer of goods. However, Oklahoma has rejected the "application of the dual-capacity doctrine to impose liability upon an employer-manufacturer." Id. ¶ 9, 663 P.2d at 1226; see also Metzeler Auto. Profile Sys. v. Gluco Mfg., Inc., No. CIV-07-662-W, 2009 WL 10672501, at *2 (W.D. Okla. June 9, 2009); Evanston Ins. Co. v. Dean, No. 09-CV-0049-CVE-TLW, 2009 WL 2972336, at *9-10 (N.D. Okla. Sept. 11, 2009). The Oklahoma Supreme Court rejected the employer-manufacturer capacity because the employer must provide a safe working environment for its employees whether or not employees use equipment purchased or manufactured by the employer and the two capacities of employer and manufacturer are often too intertwined to distinguish. Weber, 1983 OK 53, ¶¶ 9-10, 663 P.2d at 1225.

While the dual-capacity doctrine was rejected in the employer-manufacturer context, it is still a valid doctrine if some additional capacity imposes duties owed by the employer to the employees that are independent from the employment relationship.[5] See Weber, 1983 OK 53, ¶ 10, 663 P.2d at 1225; see also Deffenbaugh v. Hudson, 1990 OK 37, ¶¶ 20-23, 791 P.2d 84, 90 (co-employee identity). For example, a contract or statute

---

[5] Teledrift notified the Court of the recent decision in Shadid v. K 9 Univ., LLC, but the Court finds the case does not apply. The Shadid court relied on key language found in the AWCA and found the legislature intended to abrogate the doctrine because the language was not present in previous versions of the statute. Shadid v. K 9 Univ., LLC, 2017 OK CIV APP 45, ¶ 7, 402 P.3d 698, 701. This case is governed by the WCC, and thus, prior case law is still valid.

7

may invoke the dual-capacity doctrine. See Velocity Express, Inc. v. Roberts Truck Ctr., Inc., No. CIV-02-1849-F, 2003 WL 23315993, at *5 (W.D. Okla. Aug. 8, 2003) (contract required indemnification); Travelers Ins. Co. v. L.V. French Truck Serv., Inc., 1988 OK 76, ¶ 6, 770 P.2d 551, 554-55 (statute required indemnification).

## VI. Product Liability: Designing the Battery Pack

SWE argues the dual-capacity doctrine allows product liability indemnification in spite of Teledrift's employer immunity. Teledrift's Motion asserts 12 Okla. Stat. § 832.1 prevents indemnification because it is not the manufacturer of the battery pack, and SWE responds that a designer should be included within the meaning of manufacturer and Teledrift designed the battery pack. SWE filed a separate Motion making the request that the Court find Teledrift designed the battery pack as a matter of law. Teledrift and Plaintiffs offered arguments in response.

A. Manufacturer-Seller Relationship

Oklahoma's product liability indemnity statute states, "[a] manufacturer shall indemnify and hold harmless a seller against loss arising out of a product liability action." 12 Okla. Stat. § 832.1(A). The term "manufacturer" is not defined by statute, but "a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller." 12 Okla. Stat. § 832.1(D).

SWE argues the intended meaning of "manufacturer" can include the designer of a product. Neither the parties nor the Court have identified any Oklahoma authority addressing the narrow question of whether the statute may bear the interpretation of

8

"manufacturer" meaning designer and "seller" meaning manufacturer or intermediary seller. When Oklahoma law has not addressed an issue, this Court will attempt to predict how the Oklahoma Supreme Court would decide the question. Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co., 214 F.3d 1183, 1188 (10th Cir. 2000) (citation omitted). The Court may consider "all resources available, including decisions of other states, [Oklahoma] and federal decisions, and the general weight and trend of authority." Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 888 (10th Cir. 1980) (citation omitted).

Generally, the applicable question is whether the manufacturer "bore responsibility for injecting the dangerous product into the stream of commerce." Spence v. Brown-Minneapolis Tank, Co., 2008 OK CIV APP 90, ¶ 16, 198 P.3d 395, 400 (examining strict-liability of seller). In other words, the intent of the statute is to protect the public from dangerous products and the entity ultimately responsible for the defect should bear the cost of the defect.

The concept that the manufacturer is often the designer is common in negligence and product liability law. See Martin v. Interstate Battery Sys. of Am., Inc., No. 12-CV-184-JED-FHM, 2016 WL 4275740, at *4 (N.D. Okla. Aug. 12, 2016) (addressing claim that defendant negligently designed or manufactured a product). Retailers, wholesalers, and distributors can be strictly liable if they sold "the defective product and placed it into the stream of commerce." § 9:3 Indemnification, 8 Okla. Prac., Product Liability Law § 9:3 (2017 ed.). Usually these parties are considered passive actors in creating the defect and the "manufacturer" owes them indemnity. Id. Oklahoma courts have often expanded

the meaning of "manufacturer" under § 832.1 and its predecessors in keeping with this concept of liability shifting.

In Honeywell v. GADA Builders, Inc., the builder of a home was deemed the "seller" and distributors of faulty products used in building the house owed the builder indemnity because they were deemed the "manufacturers". See Honeywell v. GADA Builders, Inc., 2012 OK CIV APP 11, ¶ 17, 271 P.3d 88, 94-95. The Honeywell court imposed strict-liability on the "non-manufacturer sellers" because the public interest in protecting the ultimate consumer required that retailors, who played an integral role in the overall production and marketing enterprise of the faulty products, bear the costs. Id.

In Scott v. Thunderbird, the court found the company ordering tanker trailers did not design the trailer, and thus was not required to indemnify as a "manufacturer" when the assembler submitted a design plan and the ordering party "exercise[d] its rights as a commercial purchaser and approve[d] the design." Scott v. Thunderbird Indus., Inc., 1982 OK CIV APP 31, ¶ 13, 651 P.2d 1346, 1349 (acknowledging the term "manufacturer" can be a processor or assembler). The Court finds a designer of a product may be deemed a "manufacturer" under § 832.1, much like a processor or assembler.

B.  Battery Pack Designer

The next issue is whether Teledrift actually designed the battery pack in question. If Teledrift was the designer, it may be deemed the "manufacturer" under 12 Okla. Stat. § 832.1, which requires a "manufacturer" to indemnify a "seller," or SWE. This would qualify as a dual-capacity exception to 85 Okla. Stat. § 302(A) immunity. If Teledrift is not the designer of the battery pack, then workers' compensation immunity applies.

Here, Teledrift employees filed a patent on the MWD device that included specifications for an "electrical power source consist[ing] of a suitable power source or battery cartridge which has been built into a cylindrical fashion with connectors on both sides." (Patent Application, Dkt. No. 129-10, p. 13.) When the manufacture of the ProShot was underway, Teledrift contracted with another company in 2005 to build battery packs. In 2011, Teledrift contacted SWE about becoming a second battery pack provider because SWE specialized in designing and manufacturing batteries for a wide range of commercial uses. Teledrift sent SWE design drawings and specifications for a lithium battery pack. The information was used to aid the battery pack builder in the production of the product so it properly interfaced with the ProShot. SWE proposed at least three changes to the battery pack, which Teledrift approved. A Teledrift employee testified he approved the suggested changes and SWE would not have been permitted to make the change without Teledrift's approval. Another Teledrift employee testified he worked with SWE to ensure the battery pack produced would fit inside the MWD properly, and left the battery details to SWE because its employees were the battery experts.

Teledrift argues SWE proposed additional changes that made the battery pack more likely to explode. Although Teledrift approved the changes, it asserts it relied upon SWE's expertise when making the decision, acting more like a commercial purchaser as discussed in Scott v. Thunderbird. SWE argues the changes were immaterial to the safety of the

battery and the larger problem was with the MWD tool, its ability to withstand shock, and the possibility of debris becoming lodged within the tool.[6]

The Court finds questions of material fact remain disputed regarding who designed the battery pack that prevent summary judgment. Such issues must be left for a jury's determination. SWE's Motion on this issue is denied.

CONCLUSION

For the reasons stated herein, Teledrift's Motion for Summary Judgment (Dkt. No. 118) is DENIED and Teledrift is deemed the employer. SWE's Motion for Summary Judgment (Dkt. No. 124) is DENIED. A dispute of material fact remains whether Teledrift was the designer of the battery pack. A separate judgment shall issue at the conclusion of this case.

IT IS SO ORDERED this 23rd day of October, 2017.

ROBIN J. CAUTHRON
United States District Judge

---

[6] Issues pertaining to the components part doctrine and prior Defendants Forest and Lantern's theory of liability are mentioned in the motions but are not directly at issue. The Court will address the issues as needed upon proper motion by the parties.